**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

SAIMAITI SIMAYI,

    Petitioner,

    v.

DEPARTMENT OF HOMELAND
SECURITY[1],

    Respondent.

Case No. 2:26-cv-182

**OPINION & ORDER**

Petitioner Saimaiti Simayi has been ordered removed from the United States and is currently in federal immigration custody. He seeks an individualized bond hearing in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Because the petitioner entered the United States through the Visa Waiver Program (VWP), he gave up any right to contest removal except through the asylum process. His application for asylum was dismissed, and he has appealed that decision.

The petitioner is entitled to a bond hearing only if he is not subject to an administratively final order of removal. Therefore, the limited question in this case

---

[1] The petitioner identified the Caroline Detention Center as the respondent, but the real party in interest is the Department of Homeland Security (DHS). Because DHS filed an opposition to the petition, this action can proceed as if the petitioner had named the correct party initially. *See* Fed. R. Civ. P. 17(a)(3). The Clerk is **DIRECTED** to update the docket to list "Department of Homeland Security" as the respondent.

is whether a removal order for a person who entered the United States through the VWP remains administratively nonfinal until their asylum petition is resolved.

The Court concludes that—at least in the context of the VWP—a pending asylum appeal renders a removal order administratively nonfinal. Therefore, the petition will be granted, and the government will be ordered to give the petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a).

## I.   BACKGROUND

The petitioner is a citizen of China and Sweden. ECF No. 9-1 ¶ 5. He entered the United States on November 24, 2016, through the VWP, which permits nonimmigrants to visit the country for a maximum of 90 days without securing a visa. *Id.* ¶ 6; 8 U.S.C. § 1187(a).

Before the petitioner's authorized stay in the United States ended, he applied for asylum, citing fear of returning to China. ECF No. 9-1 ¶ 7. United Sates Citizenship and Immigration Services determined that the petitioner was ineligible for asylum and referred his case for asylum-only proceedings. *Id.* ¶ 9. On August 1, 2025, an immigration judge found the petitioner's asylum application abandoned. *Id.* ¶ 10. The petitioner appealed that decision to the Board of Immigration Appeals (BIA) on August 28, 2025. *Id.* ¶ 11. As of the date of this Opinion and Order, the appeal remains pending. *Id.*

United States Immigration and Customs Enforcement (ICE) arrested the petitioner on December 11, 2025, and he has been in federal custody ever since. ECF No. 9-1 ¶ 12. He filed this habeas petition on February 17, 2026. ECF No. 1. On March

11, 2026, the petitioner was served with a "Final Administrative Removal Order" under the VWP, pursuant to 8 U.S.C. § 1187, directing his removal to Sweden. ECF No. 9-1 ¶¶ 14–15.

The government opposed the petition. ECF No. 9. The Honorable Lawrence R. Leonard prepared a report and recommendation (R&R) advising this Court to grant the petition in part, as to the request for a bond hearing. ECF No. 15. The government objected to the R&R. ECF No. 16.

## II.    LEGAL STANDARDS

A district court may issue a writ of habeas corpus to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In this case, the petitioner alleges a violation of 8 U.S.C. § 1226.[2] That statute provides that an alien who has already entered the United States may be detained or released on bond pending a removal decision. 8 U.S.C. § 1226(a). *See also Hasan v. Crawford*, 800 F. Supp. 3d 641, 651–52 (E.D. Va. 2025) (explaining that individuals detained under § 1226(a) "are entitled to a bond hearing before an [immigration judge] at any time before entry of a final removal order") (quotation marks and citation omitted).

---

[2] The petitioner also asserts that his continued detention violates the Due Process Clause of the Fifth Amendment, but he does not develop that contention. *See* ECF Nos. 1, 17. However, because the Court concludes that the petitioner is entitled to a bond hearing by statute, it need not address the constitutional claim.

### III.   ANALYSIS

The government contends that because asylum is a mechanism for relief from removal, asylum proceedings cannot affect the administrative finality of a removal order. ECF No. 16 at 4. While that might be true in other circumstances—and this Court's decision should not be read to say that all removal orders are nonfinal until their subjects have exhausted all options for relief from removal—it is not true in the context of the Visa Waiver Program.

VWP participants waive their right "to contest, *other than on the basis of an application for asylum*, any action for removal." 8 U.S.C. § 1187(b)(2) (emphasis added).[3] Thus, the statutory text indicates that an "application for asylum" is a "basis" "to contest" an "action for removal." *Id.* Here 'action' is the direct object of 'contest,' which means the thing contested is the action itself, not its outcome (i.e., a

---

[3] It is troubling that the government opted to leave out the language the Court emphasizes here. ECF No. 16 at 4 (asserting that the petitioner "has already waived his right to contest *any action* for removal") (*see*-citing 8 U.S.C. § 1187(b)(2)) (emphasis in the government's brief). As the Court lays out in this Opinion and Order, the law on this issue is complicated, and the decision is a close call. The government could have made a compelling argument without attempting to mislead the Court. It was unwise to obscure the statutory language that was unfavorable to its position.

removal order).[4] Therefore, in the context of the VWP, an 'application for asylum' is a direct barrier to an executable removal order.[5]

It initially seems as though that barrier must be substantive but not administrative. After all, an asylum application is resolved by a different decisionmaker and results in an order separate from the removal order. But the Supreme Court's holding in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), complicates that conclusion.

*Guzman Chavez* dealt with detainees subject to reinstated removal orders, who had pending actions for withholding removal. A removal order generally directs the government to remove an individual to a specific second country.[6] So if an individual subject to an order directing their removal to Country X obtains withholding relief with respect to Country X, then their removal order is not executable as written. But according to *Guzman Chavez* it is still "administratively final." *Guzman Chavez*, 594 U.S. at 540. That leaves two options: Either (1) administrative finality depends

---

[4] If Congress had wanted to say that VWP participants could not contest removal directly at all but could receive relief from removal through asylum, it could have done so. In fact that would have been an easier sentence to write: The statute could have read, 'An alien may not be provided a waiver under the program unless the alien has waived any right . . . to contest any action for removal; but the alien may receive relief from removal, through asylum only.'

[5] The government does not contend that an individual ceases to have an "application for asylum" at any point before the resolution of the administrative appeal process on the asylum claim.

[6] The *Guzman Chavez* Court knew that. *See* 594 U.S. at 530 (noting that the statute that forecloses reinstated removal orders from review "does not [] preclude an alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country *designated in his reinstated removal order*") (emphasis added).

exclusively on whether any administrative process remains available with respect to the removal order itself, or (2) administrative finality takes into account whether a decision in a separate proceeding could make the removal order *entirely* inexecutable.

Option One would seem to make the most sense. And, applied here, it would dictate that the removal order became administratively final the moment it was issued, since there was no administrative process left to be had on *that order*, even though further process on the asylum application could render the removal order inexecutable.

But contrary to the government's position, Option One cannot be the rule of *Guzman Chavez*, because the detainees in that case *conceded* that their removal orders were administratively final under that definition. *Guzman Chavez*, 594 U.S. at 535 ("Respondents do not contest that their prior removal orders have long been 'administratively final'" in the sense that "there is nothing left for the BIA to do with respect to the removal order other than to execute it.").[7] So *Guzman Chavez* must stand for the proposition that withholding-only proceedings do not affect the administrative finality of removal orders because they cannot render the subject of such an order unremovable.

But the *Guzman Chavez* Court stated that asylum-only proceedings *can* have that effect. *Guzman Chavez*, 594 U.S. at 536 ("[A] grant of asylum permits an alien

---

[7] Instead, the detainees in *Guzman Chavez* argued that their removal orders were *functionally* nonfinal, "because an immigration judge or the BIA" could still "determine that DHS cannot remove [them] to the specific country designated in the removal order." *Guzman Chavez*, 594 U.S. at 535.

*to remain in the United States.*") (quotation marks and citation omitted, emphasis in original). Thus, a pending asylum claim is not merely a "practical problem[] associated with the execution of a removal order," like a grant of withholding relief is. *Id.* at 538. Instead, because a grant of asylum would make the removal order entirely inexecutable, a pending asylum claim is—as the VWP statute contemplates—a substantive hurdle to a valid removal order.

In *Guzman Chavez*, the detainees argued that "a removal order does not become 'administratively final' until the withholding-only proceedings conclude," because "by seeking withholding-only relief, respondents are in effect seeking a modification of, a change in, or a withholding of, the prior order of removal." 594 U.S. at 539 (quotation marks omitted). That was wrong because "removal orders and withholding-only proceedings address two distinct questions": The former deals with "where an alien will be removed" and the latter with "whether the alien will be removed at all." *Id.* at 539, 543.

But in the context of the VWP, since withholding relief is not available, the *only* question is "whether the alien will be removed at all." *Guzman Chavez*, 594 U.S. at 543. And that question governs "detention under § 1226." *Id.* at 543. Thus, if an individual who entered the country through the VWP has a pending asylum claim, the "decision on whether the alien is to be removed from the United States" remains "pending," and he is eligible for a bond hearing under 8 U.S.C. § 1226(a).

There is a wrinkle in *Guzman Chavez* that leaves the Court cautious about applying it but does not ultimately upset the outcome here. This Opinion and Order

will address that complication, in hopes that another court considering these issues will have an opportunity to clear up the confusion.

The Supreme Court has at least twice asserted that "a grant of asylum permits an alien to *remain in the United States*." *Guzman Chavez*, 594 U.S. at 536 (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999)) (emphasis in *Guzman Chavez*). And while that was not the holding of either case, the principle featured prominently in the *Guzman Chavez* Court's reasoning. *See Guzman Chavez*, 594 U.S. at 536–37 (relying on the distinction between where an alien is to be removed to and whether they are to be removed from the United States at all).

However, the original source of the statement is not the asylum statute: It is footnote six to the opinion in *INS v. Cardoza-Fonseca*. *See Aguirre-Aguirre*, 526 U.S. at 419 (citing *Cardoza-Fonseca*, 480 U.S. 421, 429 n.6 (1987)). That footnote states that "asylum is a greater form of relief" than withholding removal—but not because asylum 'permits an alien to remain in the United States'—rather, because asylum permits "adjustment of status to that of a lawful permanent resident." *Cardoza-Fonseca*, 480 U.S. at 429 n.6.

It is easy to see how one could read *Cardoza-Fonseca* to say more than it does. The footnote states, in relevant part:

> Asylum and withholding of deportation are two distinct forms of relief. . . . [A]sylum affords broader benefits. . . . [Withholding] relief is country specific . . . . But [it does] not prevent [a person's] exclusion and deportation to [a third country] . . . if that country will accept [the alien]. In contrast, asylum is a greater form of relief. When granted asylum the alien may be eligible for adjustment of status

> to that of a lawful permanent resident . . . after residing here one year . . . .

The Supreme Court in both *Aguirre-Aguirre* and *Guzman Chavez* understood this to mean that asylum offers broader benefits because it is *not country-specific*; but that is not what *Cardoza-Fonseca* actually says. *Cardoza-Fonseca* makes no mention of permission to remain in the United States; it states only that asylum—unlike withholding removal—offers eligibility for permanent resident status.

If the *Cardoza-Fonseca* Court had meant what *Aguirre-Aguirre* and *Guzman Chavez* later read, it could have stated: 'When granted asylum the alien *is permitted to stay in the United States and* may be eligible for adjustment of status to that of a lawful permanent resident after residing here one year.' Instead, the footnote as written says: *In addition to the country-specific relief offered by withholding removal,* a person granted asylum may be eligible for adjustment of status to that of a lawful permanent resident after residing here one year.

The latter is more consistent with the asylum statute itself. *See* 8 U.S.C. § 1158. Subsection (c)(1) directs the Attorney General, "[i]n the case of an alien granted asylum," to "not remove or return the alien to the alien's country of nationality or, in the case of a person having no nationality, the country of the alien's last habitual residence" and to "authorize the alien to engage in employment in the United States." 8 U.S.C. § 1158(c)(1).[8] But the statute makes no mention of

---

[8] Authorization "to engage in employment in the United States" certainly implies permission to remain in the country, but the two concepts are not equivalent. 8 U.S.C. § 1158(c)(1). Instead, permission to remain in the United States is a matter of an individual's status, and some statuses carry—but are not coterminous with—

preventing removal entirely. In other words, the statute frames asylum as protection from return to a specific country or countries—just like withholding removal—not as a guarantee of permission to stay in the United States. In fact, the asylum statute explicitly contemplates removing an asylee from the United States to a safe third country. *See* 8 U.S.C. § 1158(c)(2)(C) (permitting termination of asylum where "the alien *may be removed* . . . to a country . . . in which the alien's life or freedom would not be threatened [on an impermissible basis], and where the alien is eligible to receive asylum or equivalent *temporary* protection") (emphasis added).

Thus, the Supreme Court's insistence that "a grant of asylum permits an alien to remain in the United States" is confounding. *Guzman Chavez*, 594 U.S. at 536; *Aguirre-Aguirre*, 526 U.S. at 419. It may well be that the Supreme Court understands from the *Cardoza-Fonseca* footnote something that is not written there. Or it may be that *Aguirre-Aguirre* misread *Cardoza-Fonseca*, and the *Guzman Chavez* Court did not correct the error. Either way, this Court is not at liberty to clear up the issue, because the outcome of the present case would be the same either way.

If *Guzman Chavez* is wrong in its description, and in fact a grant of asylum— just like withholding removal—does *not* necessarily make a removal order inexecutable by affirmatively permitting the asylee to remain in the United States, then the portion of this Court's reasoning that relied on *Guzman Chavez* would go

---

employment authorization. *See, e.g.*, 8 U.S.C. § 1254a(a)(1)(B) (employment authorization for individuals with temporary protected status); *id.* § 1255a(b)(3)(B) (employment authorization for lawful permanent residents); *see also* 8 U.S.C. § 1324a (governing employment eligibility generally).

away. But in that case the reasoning in *Guzman Chavez* would fall apart as well, since the other available basis for concluding the detainees' removal orders were administratively final was conceded before the Supreme Court decided the issue.

That would bring this Court's analysis back to the question of whether a pending asylum application is an *administrative* barrier to finality of a removal order for a VWP participant, as opposed to a substantive one in the form of relief from removal only. And this Court would look to persuasive authority to discern an answer.

The Fourth Circuit has not spoken to this issue directly, but it has expressed a belief that, in the context of the VWP, the Department of Homeland Security must wait to "enter a final order of removal" until after an immigration judge "*and BIA have denied relief in a VWP asylum-only proceeding.*" *Salomao v. Garland*, No. 20-1856, 2022 WL 1301773, at *2 (4th Cir. May 2, 2022) (emphasis added).[9]

Taken together with the interpretation of 8 U.S.C. § 1187(b) laid out above, that framing makes sense: Since a VWP participant can directly 'contest removal' by means of an asylum application, a removal order for a VWP participant becomes final only once the administrative process associated with the asylum application (if the alien submits one) is complete. While an action for relief from removal does not have the same relationship with 'contesting removal' in other contexts under the immigration code—and, therefore, a pending asylum proceeding may not render a

---

[9] The government objects to Judge Leonard's application of *Solamao*, which differs from the application in this Opinion and Order. Because this Court finds the case merely persuasive on this narrow issue, it need not address the government's argument.

11

removal order administratively nonfinal in most cases—in the context of the VWP, resolution of an asylum claim (if there is one) is essential to the validity of the removal order itself.

Because the petitioner's asylum proceedings remain pending before the BIA, he is not subject to an administratively final order of removal, so 8 U.S.C. § 1226(a) governs his detention, rather than § 1231(a)(2). Accordingly, he is entitled to a bond hearing before an immigration judge, in which the immigration judge must determine whether the petitioner is a danger to the community and whether he is a flight risk.[10]

## IV.    CONCLUSION

The Honorable Lawrence R. Leonard's report and recommendation (ECF No. 16) is **ADOPTED WITH MODIFICATIONS** as described herein.

Saimaiti Simayi's motion for a writ of habeas corpus (ECF No. 1) is **GRANTED IN PART**, with respect to a bond hearing, and **DENIED IN PART**, with respect to immediate release.

The government is **ORDERED** to provide the petitioner with a bond hearing in front of an immigration judge pursuant to 8 U.S.C. § 1226(a).

The immigration court is **ORDERED** to provide the petitioner with the opportunity for a bond hearing prior to any hearing on the merits of his asylum application, and not later than Wednesday, July 8, 2026.

---

[10] The petitioner asks, in the alternative, to be released immediately. ECF No. 1 at 1. Finding no clear error in Judge Leonard's conclusion that a bond hearing is the correct remedy for the statutory violation here, the Court will adopt the recommendation with respect to the remedy. *See* ECF No. 15 at 9–10; *see also* ECF No. 16 (not objecting to this recommendation).

The government is **ENJOINED** from denying bond to the petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1231(a)(1)(B).

The respondents are **ORDERED** to file a status report with this Court within three days after the petitioner's bond hearing and prior to any hearing on the merits, stating whether he has been granted bond, and, if his request for bond was denied, the reason for that denial. Simply stating that the petitioner's request for bond was denied because he was deemed a 'flight risk' or a 'danger to the community,' without more, is insufficient.

In the event the petitioner is released on bond, the government is **ENJOINED** from rearresting the petitioner, unless he has committed a new violation of any federal, state, or local law, or has failed to attend any properly noticed immigration or court hearing or is subject to detention pursuant to a final order of removal.

Should the petitioner be released on bond, the respondents are **FURTHER ENJOINED** from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2).[11]

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to the petitioner.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
July 2, 2026

---

[11] Courts in this district have found that "the automatic stay imposed in immigration cases constitutes an unequivocal violation of due process." *Hasan v. Crawford*, 800 F. Supp. 3d 641, 661 (E.D. Va. 2025).